[Cite as *State v. Hughes*, 2024-Ohio-2269.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,             :

                                                No. 113382

    v.                              :

KENNETH HUGHES,                         :

    Defendant-Appellant.            :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:**  AFFIRMED
**RELEASED AND JOURNALIZED:**  June 13, 2024

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-00-398499-ZA

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Frank Romeo Zeleznikar, Assistant Prosecuting Attorney, *for appellee.*

Web Norman Law, Inc. and William B. Norman, *for appellant.*

EMANUELLA D. GROVES, J.:

{¶ 1} Defendant-appellant Kenneth Hughes ("Hughes") appeals the trial court's decision denying his motions to vacate a void judgment, to withdraw his

guilty plea, and to correct a clerical error in the judgment entry of sentence. For the reasons that follow, we affirm the decision of the trial court.

{¶ 2} In 2001, in the midst of trial, Hughes entered into a plea agreement with the state. In exchange for guilty pleas to two counts of aggravated murder with mass murder specifications and a three-year gun specification, the state agreed to dismiss the remaining charges. The parties also presented an agreed sentence to the court of 63 years to life, 30 years to life on each count consecutive to one another and consecutive to the three-year gun specification. The trial court accepted the plea agreement and imposed the agreed sentence.

{¶ 3} The trial court initially issued a journal entry on May 23, 2001, titled "Plea in Midst of Trial." The trial court accepted the plea and sentenced Hughes to life imprisonment without the possibility of parole for "30 full years" on Count 1, plus three years for the firearm specification to run consecutively to the base charge, and life imprisonment without the possibility of parole for "30 years" on Count 2, to run consecutively to Count 1. On May 29, 2001, the trial court filed a "Sentencing Opinion." In it, the court recorded the sentence as life imprisonment without the possibility of parole for 30 years on Count 1 plus 3 years on the firearm specification to run consecutively, and life imprisonment without the possibility of parole for 30 years on Count 2 to run consecutively to Count 1.

{¶ 4} Subsequently, the trial court issued two nunc pro tunc entries to correct typographical errors: one for May 23 "Plea in the Midst of Trial" entry, which was journalized on May 31, 2001, and one for the May 29 "Sentencing Opinion"

entry, which was journalized on June 7, 2001. In both nunc pro tunc entries, however, the stated sentence is identical to the original entry. Since then, Hughes has raised multiple challenges to his convictions.

**Procedural History**

{¶ 5} In 2002, Hughes filed a direct appeal to his conviction. Hughes raised three assignments of error, two of which are relevant to this appeal. First, he claimed that his plea of guilty was not knowingly, intelligently, and voluntarily entered. *State v. Hughes*, 8th Dist. Cuyahoga No. 81019, 2003-Ohio-166, ¶ 1 ("*Hughes I*"). Secondly, he claimed that there was insufficient evidence to establish that he acted with the prior calculation and design necessary for aggravated murder. *Id.* This court rejected Hughes's claimed errors and found that the plea was knowing, voluntary, and intelligent, and there was sufficient evidence to establish prior calculation and design. *Id.* at ¶ 23, 38. Hughes appealed to the Ohio Supreme Court, which declined to hear the case. *State v. Hughes*, 99 Ohio St.3d 1436, 2003-Ohio-2902, 789 N.E.2d 1117.

{¶ 6} Subsequently, on July 31, 2009, Hughes filed a motion to vacate and/or set aside his sentences and a motion to withdraw his guilty plea. The trial court denied the motions. Hughes did not appeal those decisions. On June 7, 2010, Hughes again filed a motion to vacate and/or set aside his sentence. He simultaneously filed a motion to dismiss the indictment for failure to charge an offense. On August 17, 2010, the trial court denied both motions. On August 31,

2010, Hughes appealed the trial court's decision. This court dismissed the appeal on October 25, 2010, for failure to file the record.

{¶ 7} On December 29, 2010, Hughes filed a motion for resentencing and to issue a final appealable order. The trial court denied the motion on February 11, 2011. Hughes filed a notice of delayed appeal on February 11, 2011. This court treated Hughes's notice as a motion for leave to file a delayed appeal and denied it. The appeal was then dismissed. On August 11, 2011, Hughes again filed a motion to withdraw his guilty plea. The trial court denied the motion on August 22, 2011, and Hughes filed a notice of appeal on September 14, 2011. This court affirmed the judgment of the trial court noting that Hughes's claims were barred by the doctrine of res judicata. *State v. Hughes*, 8th Dist. Cuyahoga No. 97311, 2012-Ohio-706, ¶ 10 (*"Hughes II"*).

{¶ 8} On March 21, 2012, Hughes filed a motion to correct void sentence. The trial court denied the motion on May 7, 2012. Hughes appealed; however, the appeal was subsequently dismissed on July 12, 2012 for failure to file the record. Hughes subsequently filed another motion to correct void sentence on October 5, 2012. The trial court denied the motion on October 18, 2012. Hughes subsequently perfected an appeal to that decision. Hughes, arguing pro se, challenged the sentence on his firearm specification. This court, noting that Hughes arguments had no basis in law, affirmed the trial court's decision denying the motion. *State v. Hughes*, 8th Dist. Cuyahoga No. 99165, 2013-Ohio-1566, ¶ 6.

**{¶ 9}** On March 6, 2015, Hughes filed a motion to "revise/correct judgment entry of conviction and sentence with de novo resentencing requested as though sentencing had never previously occurred." The trial court denied the motion on May 28, 2015. Hughes did not appeal that decision. However, he subsequently filed a writ of mandamus making the same allegations as in his March 6, 2015 motion. He specifically challenged the imposition of a "30-year sentence," arguing that the only sentence that could be imposed was "30 full years." This court denied the writ finding the claims were barred by res judicata. *State ex rel. Hughes v. Cuyahoga Cty.*, 8th Dist. Cuyahoga No. 104478, 2016-Ohio-5936, ¶ 7. The Ohio Supreme Court affirmed the decision on the same basis. *State ex rel. Hughes v. Cuyahoga Cty.*, 151 Ohio St.3d 45, 2017-Ohio-7780, 85 N.E.3d 723, ¶ 5.

**The Current Case**

**{¶ 10}** On October 6, 2023, Hughes filed two motions: a motion to correct sentencing entry and a motion to vacate void judgment and withdraw guilty plea. In the motion to correct the sentencing entry, Hughes asked the trial court to correct the journal entry to reflect the sentence pronounced at sentencing. Specifically, Hughes claimed that his announced sentence was 30 years to life on each count and three years on firearm specification to run consecutively, but the journal entry imposed a sentence of 30 full years to life on Count 1. Hughes argued that the distinction impacted his ability to qualify for good time that could reduce his sentence.

{¶ 11} In his motion to vacate, Hughes argued that his guilty plea should be withdrawn because he received ineffective assistance of counsel. He argued that his plea was not knowing and voluntary because he was misinformed as to the nature and consequences of the sentence and he was misinformed of the requirements to establish "premeditation and design." Specifically, Hughes argued that he would not have entered a guilty plea if he understood the impact of receiving a sentence of 30 full years to life. Further, if he had understood the evidence required to establish "premeditation and design" he would not have entered a guilty plea. The trial court denied both motions.

{¶ 12} Hughes now appeals raising the following assignments of error for our review.

### Assignment of Error No. 1

The trial court erred by denying Appellant Hughes' motion to withdraw his guilty plea where both the trial court and defense counsel failed to inform Appellant Hughes of the true consequences of his plea, (namely, a sentence of 30-full-years-to-life, consecutive to an unqualified term of 30 years to life) and correctly informed, appellant Hughes would not have pled guilty and would have proceeded to trial. Plea Colloquy, pages 13-14.

### Assignment of Error No. 2

The trial court erred by denying Appellant Hughes' motion to correct clerical error where the sentence reflected by the journal entry conflicts with the sentence imposed in open court. Sentencing Minutes, pages 56-57.

{¶ 13} Preliminarily, we note that Hughes raises claims in this appeal that he has raised several times before. Even if these new claims exposed an error in the trial court's rulings, the Ohio Supreme Court has made clear that when a trial court

has jurisdiction over the case and the defendant, an error is voidable and may be challenged on appeal. *State v. Henderson*, 161 Ohio St.3d 285, 2020-Ohio-4784, 162 N.E.3d 776, ¶ 27. If an error is voidable and not addressed during direct appeal or in a postconviction petition, res judicata would apply to prevent any subsequent challenge. *State v. Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913, 159 N.E.3d 248, ¶ 18. In contrast, a void judgment may be challenged at any time. *Harper* at ¶ 18. "A sentence is void only if the sentencing court lacks jurisdiction over the subject matter of the case or personal jurisdiction over the accused." *Henderson* at ¶ 27. Although Hughes suggests his plea was void, he does not raise any jurisdictional challenges.

{¶ 14} Res judicata bars a challenge to a valid, final judgment of conviction when that challenge has been raised or could have been raised on appeal. *Hughes II* at ¶ 9, citing *State v. Ketterer*, 126 Ohio St.3d 448, 2010-Ohio-3831, 935 N.E.2d 9, ¶ 59, citing *State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967), paragraph nine of the syllabus. In the instant case, Hughes raises challenges that were previously addressed in his direct appeal, two subsequent appeals, and a writ of mandamus.

{¶ 15} Additionally, Hughes argues that his guilty plea was not knowing, voluntary, and intelligent where the trial court erred by imposing a sentence in its journal entry that was different from the one announced at the hearing. This claim is barred by res judicata. The June 7, 2001 nunc pro tunc sentencing entry states that Hughes received a sentence of life imprisonment without the possibility of

parole for 30 years for Count 1 plus three years for the firearm specification to run consecutively, and life imprisonment without the possibility of parole for 30 years for Count 2 to run consecutively to Count 1. Hughes argued his plea was not knowing, voluntary, and intelligent and the court should have withdrawn his plea in *Hughes I and II*. Additionally, he raised this specific issue in a motion to the trial court in 2015, which subsequently became one of his claims in his writ of mandamus. This court has recognized on multiple occasions that res judicata bars all claims raised in a motion to withdraw guilty plea under Crim.R. 32.1 that were or could have been raised in a prior proceeding. *Hughes II* at ¶ 9, citing *State v. Grady*, 8th Dist. Cuyahoga Nos. 96523, 96524, and 96525, 2011-Ohio-5503, ¶ 9. The facts that support the current claims were available to Hughes immediately after he was sentenced and therefore could have been and should have been raised in his direct appeal.

{¶ 16} Hughes also challenges his conviction for aggravated murder, arguing that there was insufficient evidence of premeditation and design. Hughes raised this issue in his direct appeal, *Hughes I*; however, he argues, citing to *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, that subsequent case law establishes his actual innocence. We disagree.

{¶ 17} Contrary to Hughes assertion in his brief, *Walker* did not create a new standard for establishing prior calculation and design. *Walker* addressed the fact that when the General Assembly amended the aggravated murder statute in 1971 it "explicitly rejected the notion that brief premeditation prior to murder could

establish prior calculation and design." *Walker* at ¶ 17.  Accordingly, in *Walker*, where the facts established that there was a melee involving multiple people and during that melee Walker pulled a gun and shot and killed the victim, the evidence established a momentary deliberation, which was insufficient to establish prior calculation and design.  *Id.*

{¶ 18} In contrast, Hughes was alleged to have fought Marquese Bryant ("Bryant") before pulling a gun, after which Bryant fled.  Subsequent testimony alleged that Hughes was in the parking lot for several minutes searching for Bryant.  When Hughes located Bryant, he raised a gun and shot several times, killing two innocent bystanders, Lindsay and Roberson.  The state submitted six affidavits from witnesses to the event at sentencing.  Bryant's affidavit was read into the record; however, we note that counsel for Hughes elected to remove those two pages from the copy of the transcript attached to the motion to vacate.  As this court noted in *Hughes I*:

> Detective Hasan read Bryant's written statement into evidence.  Bryant stated he and Hughes engaged in fisticuffs immediately preceding the shooting.  The fisticuffs ended when Hughes brandished a handgun and Bryant fled.  A few minutes later, Bryant saw Hughes raise a handgun and begin shooting in his direction.

*Hughes I* at ¶ 30.

{¶ 19} This court directly addressed prior calculation and design and noted that there is no bright-line test to determine its presence or absence.  *Id.* at ¶ 32.  This court further noted:

The several minutes during which Hughes sought Bryant in the parking lot provided him sufficient time and opportunity to plan the shooting. Further, the circumstances surrounding the homicides demonstrate Hughes implemented a scheme calculated to kill Bryant.

*Id.* at ¶ 37.

{¶ 20} Accordingly, Hughes's challenge to the sufficiency of the evidence was fully and appropriately considered in the first appeal. *Walker* did not establish new law; rather it clarified how old law was misapplied in that case to convict Walker of aggravated murder where seconds transpired between the initial altercation and the shooting.

{¶ 21} Based on the foregoing, we find that Hughes's assignments of error are barred by res judicata.

{¶ 22} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, JUDGE

MICHELLE J. SHEEHAN, P.J., and
MICHAEL JOHN RYAN, J., CONCUR